# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | |
|---|---|
| SU MIN KIM and JI HUN KIM,<br>　　*Plaintiffs*,<br><br>v.<br><br>AMERICAN HONDA MOTOR CO.,<br>INC.,<br>　　*Defendant*. | §<br>§<br>§<br>§　Civil Action No.  4:19-CV-00332<br>§　Judge Mazzant<br>§<br>§<br>§<br>§ |

### MEMORANDUM OPINION AND ORDER

Pending before the Court is Plaintiffs' Motion To Limit The Expert Testimony Of Michael Carhart And To Strike Defense Experts' Sled Test And Brief In Support (Dkt. #48). Having considered the motion and the relevant pleadings, the Court finds the motion should be **DENIED**.

### BACKGROUND

On June 30, 2018, Plaintiff Ji Hun Kim ("Ji Hun") was driving a 2014 Honda CR-V in the eastbound direction on Warren Parkway in Frisco, Texas. Ji Hun was accompanied by his sister, Su Min Kim ("Su Min"), who was riding in the front passenger seat of the CR-V. At the same time, Trae Michael Hubbard ("Hubbard") was driving northbound on Dallas Parkway in a 2009 Toyota Scion. When Hubbard reached the intersection of Warren Parkway and Dallas Parkway, he ran a red light and T-boned the passenger side of Ji Hun's vehicle. After the initial impact between Hubbard and Ji Hun, a 2015 Lexus NX SUV—traveling eastbound on Warren Parkway— also made contact with Hubbard's vehicle.

As alleged by Plaintiffs, "[t]his far-side impact collision caused driver Ji Hun [ ] to collide his head into the head" of Su Min (Dkt. #47 at p. 2). As a result, Su Min "sustained severe, debilitating, and permanent injuries to her brain, skull, face, and left eye" (Dkt. #47 at p. 2).

Further, "[a]s a result of witnessing this event . . . [Ji Hun] suffered severe emotional distress" and mental anguish (Dkt. #36 at p. 8). Shortly after the collision occurred, Officer Tyler Tibbits arrived on the scene. The Officer "concluded Hubbard was at fault and issued him a citation for failure to yield right-of-way and serious bodily injury in the municipality of Frisco" (Dkt. #42 at p. 2).

On May 7, 2019, Plaintiffs sued Defendant American Honda Motor Co., Inc. ("Honda"), asserting various theories of design defect premised upon both strict liability and negligence (Dkt. #36). On March 13, 2022, Plaintiffs filed the present motion, moving to limit the expert testimony of Dr. Michael Carhart ("Dr. Carhart") and to strike the defense experts' sled test (Dkt. #48). Defendant filed a response in opposition on March 25, 2022 (Dkt. #53). On April 1, 2022, Plaintiffs filed a reply (Dkt. #60).

**LEGAL STANDARD**

Federal Rule of Evidence 702 provides for the admission of expert testimony that assists the trier of fact to understand the evidence or to determine a fact in issue. FED. R. EVID. 702. In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, the Supreme Court instructed courts to function as gatekeepers, and determine whether expert testimony should be presented to the jury. 509 U.S. 579, 590–93 (1993). Courts act as gatekeepers of expert testimony "to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kuhmo Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999).

The party offering the expert's testimony has the burden to prove that: (1) the expert is qualified; (2) the testimony is relevant to an issue in the case; and (3) the testimony is reliable. *Daubert*, 509 U.S. at 590–91. A proffered expert witness is qualified to testify by virtue of his or her "knowledge, skill, experience, training, or education." FED. R. EVID. 702. Moreover, to be

admissible, expert testimony must be "not only relevant but reliable." *Daubert*, 509 U.S. at 589. "This gate-keeping obligation applies to all types of expert testimony, not just scientific testimony." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 244 (5th Cir. 2002) (citing *Kuhmo*, 526 U.S. at 147).

In deciding whether to admit or exclude expert testimony, the Court should consider numerous factors. *Daubert*, 509 U.S. at 594. In *Daubert*, the Supreme Court offered the following, non-exclusive list of factors that courts may use when evaluating the reliability of expert testimony: (1) whether the expert's theory or technique can be or has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error of the challenged method; and (4) whether the theory or technique is generally accepted in the relevant scientific community. *Id.* at 593–94; *Pipitone*, 288 F.3d at 244. When evaluating *Daubert* challenges, courts focus "on [the experts'] principles and methodology, not on the conclusions that [the experts] generate." *Daubert*, 509 U.S. at 595.

The *Daubert* factors are not "a definitive checklist or test." *Id.* at 593. As the Supreme Court has emphasized, the *Daubert* framework is "a flexible one." *Id.* at 594. The test for determining reliability can adapt to the particular circumstances underlying the testimony at issue. *Kuhmo*, 526 U.S. at 152. Accordingly, the decision to allow or exclude experts from testifying under *Daubert* is committed to the sound discretion of the district court. *St. Martin v. Mobil Expl. & Producing U.S., Inc.*, 224 F.3d 402, 405 (5th Cir. 2000) (citations omitted).

## ANALYSIS

Plaintiffs argue that Dr. Carhart is not a qualified expert because his area of expertise is in biomechanical engineering—not automotive design. He, therefore, cannot render opinions on crashworthiness, automotive defect, or performance of safety systems without misleading the jury.

Plaintiffs further argue that the exponent sled test be excluded because it is not reliable evidence. The Court addresses each argument in turn.

I.	**Dr. Carhart's Qualifications**

"Whether an individual is qualified to testify as an expert is a question of law." *Williams v. Manitowoc Cranes, L.L.C.*, 898 F.3d 607, 614–15 (5th Cir. 2018) (citing *Mathis v. Exxon Corp.*, 302 F.3d 448, 459 (5th Cir. 2002)). Pursuant to Rule 702, "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion." FED. R. EVID. 702; *see also United States v. Bourgeois*, 950 F.2d 980, 987 (5th Cir. 1992) ("[t]o qualify as an expert, 'the witness must have such knowledge or experience in [his] field or calling as to make it appear that his opinion or inference will probably aid the trier in his search for truth'"); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 151 (1999) (stating that a witness may be an expert even if his or her expertise is based purely on experience). Rule 702 does not require "that an expert be highly qualified in order to testify about a given issue." *Williams*, 898 F.3d at 614–15. Indeed, "[a]lthough an expert's qualifications may be less-than-sterling, she may still be certified." *Id.* For all a Court must find "are 'sufficient indicia' that an individual will 'provide a reliable opinion' on the subject . . . ." *Id.* at 625 (citing *Huss v. Gayden*, 571 F.3d 442, 455–56 (5th Cir. 2009)). This is because "[d]ifferences in expertise bear chiefly on the weight to be assigned to the testimony by the trier of fact, not its admissibility." *Id.*

That said, "[a] district court should refuse to allow an expert witness to testify if it finds that the witness is not qualified to testify in a particular field or on a given subject." *Wilson v. Woods*, 163 F.3d 935, 937 (5th Cir. 1999) (quoting *Holbrook v. Lykes Bros. Steamship Co., Inc.*, 80 F.3d 777, 781 (3d Cir. 1996)). In making the determination of whether an expert is qualified, a district court is afforded "wide latitude." *Id.* at 936–37 (citing *Watkins v. Telsmith, Inc.*, 121 F.3d

4

984, 988 (5th Cir. 1997)). The proponent of expert testimony has the burden of showing that the testimony is reliable. *See United States v. Hicks*, 389 F.3d 514, 525 (5th Cir. 2004); *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998) (en banc).

Here, the Court finds that there is "sufficient indicia" that Dr. Carhart's is a well-qualified expert whose opinion may aid the jury in determining the truth. *See Mobility Workx, LLC v. Cellco P'ship*, 4:17-CV-00872, 2019 WL 5721814, at *14 (E.D. Tex. Nov. 5, 2019) (Mazzant, J.). Dr. Carhart's curriculum vitae (CV) speaks for itself. He has over 25 years of experience in biomechanics and possesses a Ph.D. in Bioengineering with a biomechanics emphasis, as well as a Bachelor of Science in Biomedical Engineering. According to his CV, Dr. Carhart "has a more than a decade of experience analyzing traumatic injuries associated with motor vehicles crashes" and "has researched human motion, loading, and injury potential through the analysis and interpretation of the crash-test responses of anthropomorphic test devices (ATDs), the development and application of computational models of the human body, and statistical analyses" (Dkt. #48, Exhibit 5 at p. 1). Moreover, Dr. Carhart has published scholarship on how aspects of motor vehicle design—such as airbags, seatbelts, and laminated side windows—can affect car accident injuries.

His education and experience are sufficient to aid the trier of fact in its search for the truth. "Rule 702 does not mandate that an expert be highly qualified in order to testify about a given issue. Differences in expertise bear chiefly on the weight to be assigned to the testimony by the trier of fact, not its admissibility." *Huss*, 571 F.3d at 452. Accordingly, the Court holds that Dr. Carhart is qualified to serve as an expert and opine on the automotive design—or proposed automotive design—of Honda vehicles. If Plaintiffs take issue with Dr. Carhart's qualifications, Plaintiffs will have the opportunity to discuss Dr. Carhart's qualifications with him on cross

examination.

## II. Sled Test Reliability

Plaintiffs further assert that the evidence from Defendant's sled test is unreliable because the experts used the "wrong crash dummy" and "did not run the required validation test on their crash test to replicate the subject crash's rotation" (Dkt. #48 at pp. 9–10). Defendants respond citing to literature that suggests the crash dummy that their experts used is, at minimum, a reasonable surrogate for human volunteers (Dkt. #53 at p. 9). Defendant further responds that the specifics of the validation test the experts employed is supported by scientific methodology.

The reliability of expert testimony or opinions is "determined by assessing 'whether the reasoning or methodology underlying the testimony is scientifically valid.'" *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 352 (5th Cir. 2007) (quoting *Daubert*, 509 U.S. at 592–93). Reliance on literature, treatises, or other publications to prepare an expert report is one factor the Court assesses when determining whether an expert is reliable. The Supreme Court itself has stated that courts act as gatekeepers of expert testimony "to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kuhmo Tire*, 526 U.S. at 152; *see also Pipitone*, 288 F.3d at 247.

Here, Defendant has met its burden of showing that the reasoning and methodology underlying the results of the sled test are scientifically reliable. The experts' testing methods are supported by research in "Validation of Sled Tests for Far-Side Occupant Kinematics Using MADYMO," which Defendant's experts relied upon to conduct their testing (Dkt. #53 at p. 9). Nothing Plaintiffs point to has convinced the Court that Defendant's experts did not base their approach or diagnosis on anything other than generally accepted principles. Again, if Plaintiffs

6

wish to attack the experts' methods or conclusions, they will have the opportunity for vigorous cross-examination at trial.

## CONCLUSION

It is therefore **ORDERED** that Plaintiffs' Motion To Limit The Expert Testimony Of Michael Carhart And To Strike Defense Experts' Sled Test And Brief In Support (Dkt. #48) is **DENIED.**

**IT IS SO ORDERED**.

SIGNED this 19th day of May, 2022.

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE