# United States District Court
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | |
|---|---|
| SU MIN KIM and JI HUN KIM, § | |
| *Plaintiffs*, § | |
| § | |
| v. § | Civil Action No.  4:19-CV-00332 |
| § | Judge Mazzant |
| AMERICAN HONDA MOTOR CO., § | |
| INC., § | |
| *Defendant*. § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant American Honda Motor Co., Inc.'s Opposed Motion To Exclude Plaintiffs' Expert Mariusz Ziejewski (Dkt. #50). Having considered the motion and the relevant pleadings, the Court finds the motion should be **DENIED**.

### BACKGROUND

On June 30, 2018, Plaintiff Ji Hun Kim ("Ji Hun") was driving a 2014 Honda CR-V in the eastbound direction on Warren Parkway in Frisco, Texas. Ji Hun was accompanied by his sister, Su Min Kim ("Su Min"), who was riding in the front passenger seat of the CR-V. At the same time, Trae Michael Hubbard ("Hubbard") was driving northbound on Dallas Parkway in a 2009 Toyota Scion. When Hubbard reached the intersection of Warren Parkway and Dallas Parkway, he ran a red light and T-boned the passenger side of Ji Hun's vehicle. After the initial impact between Hubbard and Ji Hun, a 2015 Lexus NX SUV—traveling eastbound on Warren Parkway— also made contact with Hubbard's vehicle.

As alleged by Plaintiffs, "[t]his far-side impact collision caused driver Ji Hun [ ] to collide his head into the head" of Su Min (Dkt. #47 at p. 2). As a result, Su Min "sustained severe, debilitating, and permanent injuries to her brain, skull, face, and left eye" (Dkt. #47 at p. 2).

Further, "[a]s a result of witnessing this event . . . [Ji Hun] suffered severe emotional distress" and mental anguish (Dkt. #36 at p. 8). Shortly after the collision occurred, Officer Tyler Tibbits arrived on the scene. The Officer "concluded Hubbard was at fault and issued him a citation for failure to yield right-of-way and serious bodily injury in the municipality of Frisco" (Dkt. #42 at p. 2).

On May 7, 2019, Plaintiffs sued Defendant American Honda Motor Co., Inc., asserting various theories of design defect premised upon both strict liability and negligence (Dkt. #36). On March 11, 2022, Defendant filed the present motion, moving to exclude the expert testimony of Dr. Mariusz Ziejewski ("Dr. Ziejewski") (Dkt. #50). Plaintiffs filed a response in opposition on March 25, 2022 (Dkt. #55). On April 1, 2022, Defendant filed a reply (Dkt. #59).

## LEGAL STANDARD

Federal Rule of Evidence 702 provides for the admission of expert testimony that assists the trier of fact to understand the evidence or to determine a fact in issue. FED. R. EVID. 702. In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, the Supreme Court instructed courts to function as gatekeepers, and determine whether expert testimony should be presented to the jury. 509 U.S. 579, 590–93 (1993). Courts act as gatekeepers of expert testimony "to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kuhmo Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999).

The party offering the expert's testimony has the burden to prove that: (1) the expert is qualified; (2) the testimony is relevant to an issue in the case; and (3) the testimony is reliable. *Daubert*, 509 U.S. at 590–91. A proffered expert witness is qualified to testify by virtue of his or her "knowledge, skill, experience, training, or education." FED. R. EVID. 702. Moreover, to be admissible, expert testimony must be "not only relevant but reliable." *Daubert*, 509 U.S. at 589.

"This gate-keeping obligation applies to all types of expert testimony, not just scientific testimony." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 244 (5th Cir. 2002) (citing *Kuhmo*, 526 U.S. at 147).

In deciding whether to admit or exclude expert testimony, the Court should consider numerous factors. *Daubert*, 509 U.S. at 594. In *Daubert*, the Supreme Court offered the following, non-exclusive list of factors that courts may use when evaluating the reliability of expert testimony: (1) whether the expert's theory or technique can be or has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error of the challenged method; and (4) whether the theory or technique is generally accepted in the relevant scientific community. *Id.* at 593–94; *Pipitone*, 288 F.3d at 244. When evaluating *Daubert* challenges, courts focus "on [the experts'] principles and methodology, not on the conclusions that [the experts] generate." *Daubert*, 509 U.S. at 595.

The *Daubert* factors are not "a definitive checklist or test." *Id.* at 593. As the Supreme Court has emphasized, the *Daubert* framework is "a flexible one." *Id.* at 594. The test for determining reliability can adapt to the particular circumstances underlying the testimony at issue. *Kuhmo*, 526 U.S. at 152. Accordingly, the decision to allow or exclude experts from testifying under *Daubert* is committed to the sound discretion of the district court. *St. Martin v. Mobil Expl. & Producing U.S., Inc.*, 224 F.3d 402, 405 (5th Cir. 2000) (citations omitted).

**ANALYSIS**

Defendant argues that Dr. Ziejewski's expert opinion is not reliable under Texas law because he "failed to perform a risk-utility analysis regarding [Plaintiffs' expert Neil] Hannemann's alternative designs but merely cosigns their viability" (Dkt. #50 at p. 5). Specifically, Defendant asserts that, in a design defect products liability action, Texas law requires

"proof that a technologically and economically feasible safer alternative design existed" (Dkt. #50 at p. 4). Because Dr. Ziejewski did not perform the necessary risk-utility analysis, Defendant claims that Plaintiffs cannot show a safer alternative design. Plaintiffs respond that "Dr. Ziejewski relied on Hannemann's analysis of the performance of the alternative designs to properly render []his opinion" (Dkt. #55 at p. 3).

Defendant's argument attacks the merits of the design defect claim more so than it shows Dr. Ziejewski's expert opinion is unreliable. Indeed, the crux of Defendant's argument rests on an element that Plaintiffs must prove under Texas law to succeed on a design defect claim—that a safer alternative design existed. Dr. Ziejewski is not responsible for proving this element by a preponderance of the evidence. Plaintiffs are. Dr. Ziejewski's expert opinion is one method by which Plaintiffs hope to prove this element to the jury, but ultimately, the jury will assign the weight, if any, to the expert opinion. If Defendant wishes to attack Dr. Ziejewski's methods or conclusions, it will have the opportunity for vigorous cross-examination at trial.

## CONCLUSION

It is therefore **ORDERED** that Defendant American Honda Motor Co., Inc.'s Opposed Motion To Exclude Plaintiffs' Expert Mariusz Ziejewski (Dkt. #50) is **DENIED.**

**IT IS SO ORDERED**.

**SIGNED** this 19th day of May, 2022.

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE