# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | |
|---|---|
| SU MIN KIM and JI HUN KIM, §<br>　*Plaintiffs*, §<br>§<br>v. §<br>§<br>AMERICAN HONDA MOTOR CO., §<br>INC., §<br>　*Defendant*. § | Civil Action No.  4:19-CV-00332<br>Judge Mazzant |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant American Honda Motor Co., Inc.'s Opposed Motion To Exclude Plaintiffs' Expert Neil Hannemann (Dkt. #49). Having considered the motion and the relevant pleadings, the Court finds the motion should be **DENIED**.

### BACKGROUND

On June 30, 2018, Plaintiff Ji Hun Kim ("Ji Hun") was driving a 2014 Honda CR-V in the eastbound direction on Warren Parkway in Frisco, Texas. Ji Hun was accompanied by his sister, Su Min Kim ("Su Min"), who was riding in the front passenger seat of the CR-V. At the same time, Trae Michael Hubbard ("Hubbard") was driving northbound on Dallas Parkway in a 2009 Toyota Scion. When Hubbard reached the intersection of Warren Parkway and Dallas Parkway, he ran a red light and T-boned the passenger side of Ji Hun's vehicle. After the initial impact between Hubbard and Ji Hun, a 2015 Lexus NX SUV—traveling eastbound on Warren Parkway— also made contact with Hubbard's vehicle.

As alleged by Plaintiffs, "[t]his far-side impact collision caused driver Ji Hun [ ] to collide his head into the head" of Su Min (Dkt. #47 at p. 2). As a result, Su Min "sustained severe, debilitating, and permanent injuries to her brain, skull, face, and left eye" (Dkt. #47 at p. 2).

Further, "[a]s a result of witnessing this event . . . [Ji Hun] suffered severe emotional distress" and mental anguish (Dkt. #36 at p. 8). Shortly after the collision occurred, Officer Tyler Tibbits arrived on the scene. The Officer "concluded Hubbard was at fault and issued him a citation for failure to yield right-of-way and serious bodily injury in the municipality of Frisco" (Dkt. #42 at p. 2).

On May 7, 2019, Plaintiffs sued Defendant American Honda Motor Co., Inc., asserting various theories of design defect premised upon both strict liability and negligence (Dkt. #36). On March 11, 2022, Defendant filed the present motion, moving to exclude the expert testimony of Neil Hannemann ("Hannemann") (Dkt. #49). Plaintiffs filed a response in opposition on March 25, 2022 (Dkt. #54). On April 1, 2022, Defendant filed a reply (Dkt. #58).

## LEGAL STANDARD

Federal Rule of Evidence 702 provides for the admission of expert testimony that assists the trier of fact to understand the evidence or to determine a fact in issue. FED. R. EVID. 702. In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, the Supreme Court instructed courts to function as gatekeepers, and determine whether expert testimony should be presented to the jury. 509 U.S. 579, 590–93 (1993). Courts act as gatekeepers of expert testimony "to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kuhmo Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999).

The party offering the expert's testimony has the burden to prove that: (1) the expert is qualified; (2) the testimony is relevant to an issue in the case; and (3) the testimony is reliable. *Daubert*, 509 U.S. at 590–91. A proffered expert witness is qualified to testify by virtue of his or her "knowledge, skill, experience, training, or education." FED. R. EVID. 702. Moreover, to be admissible, expert testimony must be "not only relevant but reliable." *Daubert*, 509 U.S. at 589.

"This gate-keeping obligation applies to all types of expert testimony, not just scientific testimony." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 244 (5th Cir. 2002) (citing *Kuhmo*, 526 U.S. at 147).

In deciding whether to admit or exclude expert testimony, the Court should consider numerous factors. *Daubert*, 509 U.S. at 594. In *Daubert*, the Supreme Court offered the following, non-exclusive list of factors that courts may use when evaluating the reliability of expert testimony: (1) whether the expert's theory or technique can be or has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error of the challenged method; and (4) whether the theory or technique is generally accepted in the relevant scientific community. *Id.* at 593–94; *Pipitone*, 288 F.3d at 244. When evaluating *Daubert* challenges, courts focus "on [the experts'] principles and methodology, not on the conclusions that [the experts] generate." *Daubert*, 509 U.S. at 595.

The *Daubert* factors are not "a definitive checklist or test." *Id.* at 593. As the Supreme Court has emphasized, the *Daubert* framework is "a flexible one." *Id.* at 594. The test for determining reliability can adapt to the particular circumstances underlying the testimony at issue. *Kuhmo*, 526 U.S. at 152. Accordingly, the decision to allow or exclude experts from testifying under *Daubert* is committed to the sound discretion of the district court. *St. Martin v. Mobil Expl. & Producing U.S., Inc.*, 224 F.3d 402, 405 (5th Cir. 2000) (citations omitted).

**ANALYSIS**

Defendant argues that Hannemann's expert opinion is inadmissible "because he did not conduct a risk-utility analysis regarding any of his asserted alternative designs" (Dkt. #49 at p. 7). Further, Defendant asserts that "[e]ven if Hannemann had proposed an alternative design for which he had conducted the requisite risk-utility analysis, he offered no evidence that any of his ideas

were economically feasible for the CR-V," which is required under Texas law (Dkt. #49 at p.7). Because Hannemann's report nor deposition testimony explains the economics of the proposed alternative designs, Defendant claims that Hannemann's testimony should be excluded. Plaintiffs respond that Hannemann's analysis and conclusions are derived from methodology grounded in science and explain, in detail, the science upon which Hannemann testified that he relied.

The Court finds that Plaintiffs have met their burden of establishing the reliability of Hannemann's expert opinion. Though Hannemann did not perform his own vehicle crash tests, he rests his opinion on tests performed by reputable agencies, including the Insurance Institute for Highway Safety, the National Highway Safety Administration, and other vehicle manufacturers. He inspected the subject accident vehicle. He also reviewed published literature and patents relevant to this case. Further, Hannemann "relied on the automotive literature on testing reverse geometry belts with a load limiter without serious neck injuries" and "reviewed automotive literature and Honda's internal documents which showed that" a specific type of seatbelt "would be effective means to prevent far-side impacts" (Dkt. #49 at p. 9).

Defendant's argument attacks the merits of the design defect claim more so than it shows Hannemann's expert opinion is unreliable. To be sure, Defendant's argument rests on an element that Plaintiffs must prove under Texas law to succeed on a design defect claim—that a safer alternative design existed. Although Defendant posits issues with Hannemann's methods and conclusions, the jury is the finder of fact that will determine the weight and credibility, if any, to assign to Hannemann's opinion. If Defendant wishes to attack Hannemann's methods or conclusions, it will have the opportunity for vigorous cross-examination at trial.

## CONCLUSION

It is therefore **ORDERED** that Defendant American Honda Motor Co., Inc.'s Opposed Motion To Exclude Plaintiffs' Expert Neil Hannemann (Dkt. #49) is **DENIED.**

**IT IS SO ORDERED**.

**SIGNED** this 19th day of May, 2022.

---
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE