In the United States District Court
for the Eastern District of Texas
Sherman Division

| | | |
|---|---|---|
| Su Min Kim and Ji Hun Kim, | § | |
| | § | |
| *Plaintiffs*, | § | |
| | § | Civil Action No. |
| vs. | § | 4:19-CV-00332-ALM |
| | § | |
| American Honda Motor Co., Inc., | § | |
| | § | |
| *Defendant*. | § | |

DEFENDANT AMERICAN HONDA MOTOR CO., INC.'S
RULE 50(b) MOTION FOR JUDGMENT AS A MATTER OF LAW,
AND BRIEF IN SUPPORT

Defendant American Honda Motor Co., Inc. ("AHM") requests that the Court vacate the June 28, 2022 Final Judgment, disregard all jury findings, and enter a take-nothing judgment in AHM's favor on all claims of both Plaintiffs. *See* Fed. R. Civ. P. 50(b).[1] Below, AHM sets out its matter-of-law points, followed by briefing on some of the most important points.[2]

STATEMENT OF ISSUES

In accordance with Local Rule CV-7(a)(1), AMH presents the following global issues to be decided by the Court:

---

[1] **AHM incorporates by reference its Rule 50(a) motion (Doc. 109), which the Court denied at trial.**

[2] **By filing this motion and brief, AHM does not waive any of its arguments, but rather, AHM intends to preserve all of its arguments. AHM makes all of its arguments in the alternative.**

- Is there no evidence to support the liability finding in Question No. 1?
- Is there no evidence to support the findings of proportionate responsibility in Question No. 3?
- Is there no evidence to support the damages findings in Question No. 4?
- Is there no evidence to support the damages finding in Question No. 5, subpart A?
- As a matter of law, is AHM entitled to the presumption of no liability in Texas Civil Practice and Remedies Code section 82.008(a)? And as a matter of law, do the exceptions in section 82.008(b) not apply?

## AHM's Rule 50(b) Motion

### I. Question No. 1 – Design Defect/Safer Alternative

**1.1   For the reasons in paragraphs 1.2 to 1.3, below, the Court should disregard the jury's answer to Question No. 1, which inquired whether AHM is liable for a design defect. The Court should then enter a take-nothing judgment on all of the Plaintiffs' claims.**

**1.2   There is no evidence to support the jury's "yes" answer to Question No. 1. There is no evidence to support a "yes" finding as to any of the elements submitted in Question No. 1. As a matter of law, the evidence conclusively shows that the correct answer to Question No. 1 is "no."**

**1.3   There is no evidence to support a "yes" finding on any elements omitted from Question No. 1.**

### II. Question No. 3 – Proportionate Responsibility

**2.1   For the reasons in paragraphs 2.2 to 2.5, below, the Court should disregard the jury's answers to Question No. 3, which inquired about proportionate responsibility as between AHM and Trae Michael Hubbard. The Court should then enter a take-**

nothing judgment on all of the Plaintiffs' claims.

2.2   For the reasons stated in Section I., above (which are incorporated by reference), the Court should disregard the jury's answer to Question No. 1. This means that the jury's answers to Question No. 3 are immaterial and should be disregarded.

2.3   There is no evidence to support the finding to Question No. 3, subpart A. There is also no evidence to support *any* finding to Question No. 3, subpart A. As a matter of law, the conclusive evidence shows that AHM's responsibility is 0%, or at least that AHM's responsibility is less than the 23% found by the jury.

2.4   There is no evidence to support the finding to Question No. 3, subpart B. As a matter of law, the conclusive evidence shows that Hubbard's responsibility is 100%, or at least that his responsibility is more than the 73% found by the jury.

2.5   There is no evidence to support an affirmative finding on any elements omitted from Question No. 3.

### III. Question No. 4 – Su Min Kim Damages

3.1   For the reasons in paragraphs 3.2 to 3.4, below, the Court should disregard the jury's answers to Question No. 4, which inquired about actual damages for Plaintiff Su Min Kim. The Court should then enter a take-nothing judgment on all claims of Plaintiff Su Min Kim.

3.2   For the reasons stated in Sections I. and II., above (which are incorporated by reference), the Court should disregard the jury's answers to Question Nos. 1 and 3. This means that the jury's answers to Question No. 4 are immaterial and should

be disregarded.

3.3   There is no evidence to support the damages findings in each subpart of Question No. 4 (except for the $0 finding in subpart J). There is also no evidence to support *any* damages findings in each subpart of Question No. 4 (again, except for the $0 finding in subpart J). In addition, there is no evidence to support an affirmative finding as to any element submitted in each subpart of Question No. 4 (again, except for the $0 finding in subpart J). As a matter of law, the conclusive evidence shows that the correct answer to each subpart of Question No. 4 is $0.

3.4   There is no evidence to support an affirmative finding on any elements omitted from Question No. 4.

### IV. Question No. 5 – Ji Hun Kim Damages

4.1   For the reasons in paragraphs 4.2 to 4.4, below, the Court should disregard the jury's answer to Question No. 5, subpart A, which inquired about actual damages for Plaintiff Ji Hun Kim. The Court should then enter a take-nothing judgment on all claims of Plaintiff Ji Hun Kim.

4.2   For the reasons stated in Sections I. and II., above (which are incorporated by reference), the Court should disregard the jury's answers to Question Nos. 1 and 3. This means that the jury's answer to Question No. 5, subpart A is immaterial and should be disregarded.

4.3   There is no evidence to support the damages finding in Question No. 5, subpart A. There is also no evidence to support *any* damages finding in Question No. 5, subpart A. In addition, there is no evidence to support an affirmative finding as to

any element submitted in Question No. 5, subpart A. As a matter of law, the conclusive evidence shows that the correct answer to Question No. 5, subpart A. is $0.

4.4    There is no evidence to support an affirmative finding on any elements omitted from Question No. 5, subpart A.

### V. Section 82.008 Presumption of No Liability

5.1    For the reasons in paragraphs 5.2 to 5.4, below, the Court should disregard all jury findings, because AHM is entitled to the presumption of no liability in Texas Civil Practice and Remedies Code section 82.008(a). The Court should then enter a take-nothing judgment on all of the Plaintiffs' claims.

5.2    The Court erred in ruling, as a matter of law, that the presumption does not apply because the standards in question do not govern the product risk of harm at issue. As a matter of law, the standards in question *do* govern the product risk of harm at issue.

5.3    If the presumption inherently presents a fact question (instead of a legal question), then the evidence conclusively shows that AHM is entitled to the presumption. The conclusive evidence supports findings for AHM on each element of the presumption.

5.4    Plaintiffs failed to plead one or both of the exceptions in section 82.008(b). In any event, there is no evidence to support either exception. Rather, the conclusive evidence shows that neither exception applies. Thus, Plaintiffs cannot rely on either exception to overcome the presumption of no liability, even though neither exception was submitted to the jury.

## Brief in Support of Rule 50(b) Motion

## Legal Standard

A motion for judgment as a matter of law "is a challenge to the legal sufficiency of the evidence."[3] A court should grant such a motion when there is no legally sufficient evidentiary basis for a reasonable jury to find for the plaintiff on the challenged fact questions.[4]

## Argument and Authorities

**A.  There is no evidence to support the design-defect finding.**

"The law of products liability does not guarantee that a product will be risk free," but instead imposes liability only for "defective products" that are "unreasonably dangerous to the user or consumer."[5] Plaintiffs failed to meet their burden to present evidence supporting the elements of their design-defect claim.

**1. There is no evidence that the 2014 Honda CR-V was "unreasonably dangerous."**

First, Plaintiffs had to prove that the CR-V was "unreasonably dangerous." A product is "unreasonably dangerous" when its risk outweighs its utility.[6] Plaintiffs

---

[3]  *Wyvill v. United Cos. Life Ins. Co.*, 212 F.3d 296, 301 (5th Cir. 2000).

[4]  *E.g.*, *Rutherford v. Harris County*, 197 F.3d 173, 179 (5th Cir. 1999); *Texas Farm Bureau v. U.S.*, 53 F.3d 120, 123 (5th Cir. 1995) (such a motion should be granted if the plaintiff's evidence is not legally sufficient to support the verdict).

[5]  *Genie Indus., Inc. v. Matak*, 462 S.W.3d 1, 6 (Tex. 2015).

[6]  *See, e.g.*, *Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 311 (Tex. 2009) (concluding, as a matter of law, that the product was not unreasonably dangerous).

failed to present evidence showing that any risk posed by the CR-V's restraint system outweighed the utility. "A design defect claim necessitate[s] competent expert testimony"[7] that, among other things, balances the product's risk against its utility.

But Plaintiffs' expert Neil Hannemann offered only conclusory opinions about the risk versus the utility of the CR-V's restraint system in side impacts. While noting that the relevant components of the restraint system performed properly and deployed in response to the crash, Hannemann opined merely that the CR-V's design was not reasonably safe with respect to side-impact occupant protection. A conclusory expert opinion like this is no evidence;[8] it is pure *ipse dixit* that does not support a claim.[9]

Since Plaintiffs offered no evidence that the CR-V's restraint system — which exceeded federal safety standards — was unreasonably dangerous, they failed to prove their design-defect claim.

2. There is no evidence of a "safer alternative design."

The record contains no evidence of a "safer alternative design," which must be a design that (1) "would have prevented or significantly reduced the risk of the injury"

---

[7]    *Champion v. Great Dane Ltd. P'ship*, 286 S.W.3d 533, 538 (Tex. App.—Houston [14th Dist.] 2009, no pet.).

[8]    *See, e.g.*, *City of San Antonio v. Pollock*, 284 S.W.3d 809, 818 (Tex. 2009) ("[I]f no basis for the opinion is offered, or the basis offered provides no support, the opinion is merely a conclusory statement and cannot be considered probative evidence, regardless of whether there is no objection.").

[9]    *See, e.g.*, *McManaway v. KBR, Inc.*, 852 F.3d 444, 449 (5th Cir. 2017).

*in this crash*, (2) "would not substantially impair the product's utility," and (3) "was economically and technologically feasible at the time."[10]

Thus, Plaintiffs had to show that their proposed alternative design would not, "under other circumstances[,] … impose an equal or greater risk of harm than the design at issue."[11] "Similarly, the plaintiff must show the safety benefits from [the] proposed design are foreseeably greater than the resulting costs, including any diminished usefulness or diminished safety."[12] In this regard, a "substantially different product" cannot constitute "a safer alternative design."[13]

### a. No evidence that Plaintiffs' alternative designs "would have prevented or significantly reduced the risk of the injury" in this crash.

Plaintiffs' expert Neil Hannemann failed to offer any competent evidence that his proposed alternative designs (a front center airbag and a reverse geometry seatbelt) would have prevented the injuries *in this crash*. He did not show the elements required by the Fifth Circuit in *Casey* —that the alternative would not impose an equal or greater risk of harm *and* that the safety benefits from the alternative are

---

[10]     *Genie Indus.*, 462 S.W.3d at 7; *see* Tex. Civ. Prac. & Rem. Code § 82.005(a).

[11]     *Casey v. Toyota Motor Eng'g & Mfg. N.A.*, 770 F.3d 322, 331 (5th Cir. 2014) (internal quotation marks omitted); *see Gen. Motors Corp. v. Harper*, 61 S.W.3d 118, 128 (Tex. App.—Eastland 2001, pet. denied) ("Unsupported statements that an alternative design would be safer is not evidence.").

[12]     *Casey*, 770 F.3d at 331 (internal quotation marks omitted).

[13]     *In re DePuy Orthopaedics, Inc.*, 888 F.3d 753, 766 (5th Cir. 2018) (citing *Caterpillar, Inc. v. Shears*, 911 S.W.2d 379, 385 (1995)).

foreseeably greater than the resulting costs, including any diminished usefulness or diminished safety. Instead, Hannemann presented only untested, unsupported hypotheses about his two alternatives.

Hannemann did not conduct any test on his proposed alternatives — let alone any test similar to the circumstances of this crash — *showing* that a reverse geometry seatbelt or a front center airbag would have made a difference in this accident.[14] Moreover, Plaintiffs did not point to any literature, or valid testing performed by others, that involved "similar forces and factors as involved in [Plaintiffs'] accident," to show that the proffered alternative designs would have made a difference in this accident.[15]

Instead, Plaintiffs presented only demonstrative videos and animations, none of which involved forces and factors similar to the accident at issue. None of the videos and animations replicated the dynamic forces (or the directions of force) imparted by the Toyota Scion crashing into the CR-V.[16]

---

[14]    AHM filed motions to exclude Hannemann and the Plaintiffs' other expert, Mariuz Ziejewski, for (among other things) their failure to test their proposed alternatives. (*See* Doc. 49 & 50, which AHM incorporates by reference.) The Court erred by denying these motions.

[15]    *Casey*, 770 F.3d at 333; *see id*. at 332 ("Texas law expects that an alternative design be tested before a jury can reasonably conclude that the alternative would prevent or reduce the risk of injury.").

[16]    AHM objected to the Plaintiffs' animation on several grounds: failure to disclose, lack of relevance, probative value outweighs the prejudice, and noncompliance with expert requirements under Rule 702. (*See* Doc. 77.) The Court erred by overruling these objections.

Furthermore, Plaintiffs' experts did not offer (a) any dimensions for the mock center airbag to show its effectiveness in this crash, or (b) the exact location where the seat-mounted reverse geometry seatbelt should be placed to ensure a better result. Nor did any testing replicate the physical size, shape, and composition of Su Min or Ji Hun. In fact, Hannemann testified: (a) that he *did not know* the composition of the dummies used in the demonstrative test and animation; (b) that the characters in the test and animation were *not* intended to replicate the Plaintiffs' body composition; and (c) that the test and animation were *not* intended to replicate the accident but to generally show how the proffered alternative designs *might* work.

Overall, Plaintiffs presented no competent evidence that any alternative design would have prevented or significantly reduced the risk of injury in this case.

### b. No risk-utility analysis.

To prove their safer alternative design, the Plaintiffs' experts had to perform a risk-utility analysis. But as described in AHM's motions to exclude the two experts (Doc. 49 & 50), neither expert performed a risk-utility analysis. As a result of that failure, there is no evidence of a safer alternative design.[17]

### c. No competent evidence that Hannemann's suggested designs "would not substantially impair the product's utility."

Plaintiffs had to present evidence that their proposed alternative designs would not impair the utility of the safety restraint system. But Plaintiffs offered no

---

[17]   *See Casey*, 770 F.3d at 333-34 (no evidence of a safer alternative, where the plaintiff's expert failed to conduct a risk-utility analysis).

such evidence. As for the reverse geometry seatbelt, Hannemann conceded that the negative consequences of his proposal included (a) occupants not wearing the new seatbelt configuration, (b) severe neck injuries, (c) the buckle being in the strike zone of a side impact, and (d) a heavier seat requiring additional counterbalances, weight, or structural support due to "increased load." As for the front seat center airbag, Hannemann agreed that his proffered design included the increased risk of inflation-induced injuries.

Having failed to address these (and other) potential consequences of their alternative designs, Plaintiffs failed to offer any evidence about the effect that these alternatives, either singularly or in combination, would have on the vehicle's overall utility, safety, and crashworthiness. Without such evidence, there is no evidence of a "safer alternative design."[18]

### d. No competent evidence that Hannemann's suggested designs were "economically and technologically feasible at the time."

Because economic and technological feasibility are two distinct concepts, Plaintiffs had to offer "separate proof of each."[19] Plaintiffs did not show that either of their two proposed alternative designs — the reverse geometry seatbelt and the front center airbag — were economically or technologically feasible for the CR-V.

---

[18]     *See Genie Indus.*, 462 S.W.3d at 7 (requiring that the alternative design "not substantially impair the product's utility").

[19]     *Champion v. Great Dane Ltd. P'ship*, 286 S.W.3d 533, 540 (Tex. App.—Houston [14th Dist.] 2009, no pet.).

This Court instructed the jury that AHM did not contest economic and technological feasibility. But AHM conceded only that it did not contest the *generic* technological feasibility of the center airbag design since it already existed in the marketplace. AHM did not concede the feasibility of a center airbag *for this vehicle or this crash*. And there is no circumstance under which AHM's alleged "concession" could be construed to apply to the reverse geometry seatbelt. Thus, the Court erred by instructing the jury that AHM did not contest economic or technological feasibility.

Since the instruction should not have been given, it is relevant to ask whether there is any evidence of economic and technological feasibility. "To establish economic feasibility, the plaintiff must introduce proof of the 'cost of incorporating this technology.'"[20] Although Plaintiffs provided evidence of the cost to incorporate a front center airbag, they failed to provide any similar evidence concerning the reverse geometry seatbelt, and they failed to account for other required design changes and trade-offs.[21]

Furthermore, Hannemann testified that the proffered alternative designs — reverse geometry seatbelt and front center airbag — would be best used in combination, but he failed to estimate the cost of these proposed alternatives in combination. Without such evidence, Plaintiffs did not prove economic feasibility.

Further, the evidence showed significant limitations as to the technological

---

[20]   *Honda of Am. Mfg., Inc. v. Norman*, 104 S.W.3d 600, 606 (Tex. App.—Houston [1st Dist.] 2003, pet. denied) (quoting *Smith v. Aqua-Flo, Inc.*, 23 S.W.3d 473, 478 (Tex. App.—Houston [1st Dist.] 2000, pet. denied)).

[21]   *See Casey*, 770 F.3d at 334-36 (plaintiff's expert failed to offer cost estimates to prove economic feasibility).

feasibility of a front center airbag.[22] AHM showed that the design of the CR-V began long before it was manufactured. During that design phase, there were no front center airbags in the marketplace. Incorporation of such a huge design change would have been next to impossible by the time the CR-V was actually manufactured. As a result, there is no evidence that the proposed front center airbag was technologically feasible *at the relevant time*.

Accordingly, Plaintiffs failed to present competent evidence that either of their proffered designs was economically or technologically feasible for the CR-V.

### e. The jury confirmed that the Plaintiffs' failed to present a safer alternative design.

During deliberations, the jurors asked the Court: "Can we consider modifications to the alternative designs or are we limited to only exactly what was presented in evidence? For example, can we consider a larger center airbag?" In short, the jurors asked if they could create their own alternative design. This confirms that Plaintiffs' evidence regarding their alternative designs was inadequate to prove a safer alternative design.

### 3. There is no evidence to support causation or attribution of any portion of responsibility to AHM.

There is no evidence that AHM caused the Plaintiffs' injuries, another essential element of Plaintiffs' claim. Accordingly, there is no evidence supporting a finding that AHM is responsible, let alone 23% responsible for Plaintiffs' injuries.

---

[22]     *See Boatland of Houston, Inc. v. Bailey*, 609 S.W.2d 743, 748 (Tex. 1980).

A "producing cause" is "a substantial factor in bringing about an injury, and without which the injury would not have occurred."[23] A plaintiff cannot demonstrate cause in fact where "the defendant's conduct or product does no more than furnish the condition that makes the plaintiff's injury possible."[24] "In other words, the conduct of the defendant may be too attenuated from the resulting injuries to the plaintiff to be a substantial factor in bringing about the harm."[25] "At some point in the causal chain, the defendant's conduct or product may be too remotely connected with the plaintiff's injury to constitute legal causation."[26] Thus, causation may become a question of law when the relationship between the plaintiff's injuries and the defendant's conduct or product is attenuated or remote.[27]

There is no evidence that any alleged defect in the CR-V was a substantial factor in bringing about Su Min's injuries. In fact, Plaintiffs' expert Ziejewski testified that it would be impossible to identify the location in the CR-V where Su Min's injuries occurred. Thus, it is impossible to conclude that Su Min's injuries were the result of a design defect — the lack of a front center airbag or a reverse geometry seatbelt

---

[23]   *Ford Motor Co. v. Ledesma*, 242 S.W.3d 32, 46 (Tex. 2007).

[24]   *Union Pump Co. v. Allbritton*, 898 S.W.2d 773, 776 (Tex. 1995).

[25]   *IHS Cedars Treatment Center of DeSoto, Texas, Inc. v. Mason*, 143 S.W.3d 794, 799 (Tex. 2004).

[26]   *Union Pump*, 898 S.W.2d at 775.

[27]   *E.g.*, *Ambrosio v. Carter's Shooting Ctr., Inc.*, 20 S.W.3d 262, 266 (Tex. App.—Houston [14th Dist.] 2000, pet. denied).

properly positioned in an unknown location in the CR-V. Having a front center airbag would be of no use if Su Min would have suffered the injury at a location in the CR-V where the front center airbag did not reach. Lacking competent, qualified evidence to support Plaintiffs' theory of causation, Plaintiffs did not prove that AHM contributed to those injuries.

**B.  The section 82.008 presumption of no liability applies here.**

> 1. The presumption applies as a matter of law.

Under Texas Civil Practice and Remedies Code section 82.008(a), there is a rebuttable presumption that the product manufacturer "is not liable for any injury to a claimant caused by some aspect of the … design of a product if the product manufacturer … establishes that the product's … design complied with mandatory safety standards or regulations adopted and promulgated by the federal government, or an agency of the federal government, that were applicable to the product at the time of manufacture and that governed the product risk that allegedly caused the harm."[28]

Put simply, a manufacturer is entitled to a presumption of nonliability for its product's design, if the manufacturer establishes that (1) the product complied with mandatory federal safety standards, (2) the standards were applicable to the product at the time of manufacture, and (3) the standards governed the product risk that allegedly caused the harm. This Court concluded, as a matter of law, that the third

---

[28]    Tex. Civ. Prac. & Rem. Code § 82.008(a).

element is absent. In the process, this Court declined to follow the Fifth Circuit's precedent in *Wright v. Ford Motor Company.*[29]

But *Wright* is directly on point on this issue. The Wrights alleged that the Expedition at issue "had a large and unreasonably dangerous blind spot ... [and] that Ford should have included [a] reverse sensing system as mandatory standard equipment on all Expedition models."[30] The district court had instructed the jury that the section 82.008(a) presumption applied but could be rebutted in accordance with section 82.008(b).[31] The Wrights argued that this constituted reversible error because the safety standard at issue, FMVSS 111, "d[id] not govern the rear sensing system with which they argue[d] the Expedition should have been equipped."[32]

The Fifth Circuit stressed that the applicability of the presumption turns on the alleged risk, not on the alleged defect.[33] FMVSS 111, entitled "Rearview mirrors," set out "requirements for the performance and location of rearview mirrors."[34] Nowhere did FMVSS 111 address the alleged defect (*i.e.*, the absence of rear sensors).[35]

---

[29]   508 F.3d 263 (5th Cir. 2007).

[30]   *Id.* at 267–68.

[31]   *Id.* at 269.

[32]   *Id.*

[33]   *See id.* at 270.

[34]   49 C.F.R. § 571.111 at S1.

[35]   *See id.*

However, the standard expressly stated that its purpose was "to reduce the number of deaths and injuries that occur when the driver of a motor vehicle does not have a clear and reasonably unobstructed view to the rear."[36] Because the harm in *Wright* was a death attributed to the Expedition's obstructed rear visibility, the Fifth Circuit held that FMVSS 111 addressed the product risk of harm and that the district court properly overruled the Wrights' objection to the jury charge.[37]

In this case, Plaintiffs allege that the CR-V's restraint system was defective by failing to provide sufficient protection and restraint of the vehicle occupants.[38] Considering Plaintiffs' allegations, this Court had to ask this question: What is the product risk arising from a restraint system that is "unreasonably dangerous"? The answer is that the product risk was the risk of injury to an occupant during a side-impact crash. That product risk is governed by FMVSS 214, which specifically sets the criteria for side-impact safety systems. Just as in *Wright*, the standard does not address the alleged defect (*i.e.*, the absence of a front center airbag or reverse geometry seatbelt). But the standard expressly states that its purpose is to provide protection to vehicle occupants and reduce the risk of serious or fatal injuries in side impacts.[39] The injuries suffered by Plaintiffs were the result of a side impact. Thus,

---

[36]    *Id.* at S2.

[37]    *Wright*, 508 F.3d at 272.

[38]    *See* Pls. 3rd Am. Pet. at 4.

[39]    *See* 49 C.F.R. § 571.214.

FMVSS 214 directly addressed the product risk of harm at issue.

This is confirmed by the Texas Supreme Court's ruling in *Kia Motors Corp. v. Ruiz*, 432 S.W.3d 865 (Tex. 2014), which involved a front airbag that did not deploy. The Supreme Court noted that the plaintiffs had not alleged that the [vehicle] is defective because it lacks additional occupant-restraint equipment, such as a third frontal airbag, that FMVSS 208 does not require. Had that been the case, the presumption would have applied." *Id.* at 874 (citing *Wright*, 508 F.3d at 270-72). In other words, if the claim is that the vehicle was defective because it lacked safety equipment not required by the applicable FMVSS, then the presumption applies.

That was the result in *Wright*, where the plaintiffs alleged that the Expedition should have been equipped with a reverse-sensing system that was not required by the applicable FMVSS. Thus, this Court incorrectly rejected *Wright*. Rather, both *Wright* and *Kia* demonstrate that the presumption applies, because the Plaintiffs' claim is that the CR-V *did not include* equipment that the FMVSS 214 does not require. Under that claim, FMVSS 214 does govern the product risk of harm at issue.

In summary, AHM established as a matter of law that the CR-V complied with mandatory federal safety standards that were applicable to the CR-V at the time of manufacture and that those standards governed the product risk that allegedly caused the harm. Thus, the section 82.008(a) presumption of nonliability applies to AHM as a matter of law (or as a matter of conclusive evidence).

2. No exception applies.

Once the presumption was triggered, it became the Plaintiffs' burden to rebut

the presumption by showing that: (1) the mandatory federal safety standards applicable to the product were inadequate to protect the public from unreasonable risks or injury or damage; or (2) the manufacturer, before or after marketing the product, withheld or misrepresented information or material relevant to the federal government's or agency's determination of adequacy of the safety standards at issue in the action.[40] Plaintiffs offered no evidence to establish either exception. Thus, the presumption of no liability stands unrebutted.

## C.  The Plaintiffs failed to present any evidence to support the damages awarded

*Future Medical Care* – Plaintiffs failed to present any evidence of future medical care or expenses for Su Min, let alone any evidence to support the award of $7 million. This award should therefore be deleted from the judgment.

*Lost Earning Capacity* – The evidence proffered to support lost earning capacity was highly speculative. Plaintiffs argued that Su Min desired to be a professional musician or a pharmacist, but the evidence fails to show that her abilities before the accident would have led to her becoming a professional musician. Her music professor testified that she was an average to below average violinist. Thus, Plaintiffs seems to have settled on Su Min's purported desire to become a music teacher. But nothing in the record supports such a desire. The evidence that she changed schools supports only the conclusion that she wanted to be a professional musician, not a music teacher. As for her professed desire to become a pharmacist, the evidence shows that

---

[40]     Tex. Civ. Prac. & Rem. Code § 82.008(b).

Su Min developed this aspiration post-accident. Thus, there is no evidence supporting the jury finding of $1 million for lost earnings capacity.

*Physical Impairment* – Likewise, the jury awards of $500,000 for physical impairment sustained in the past and $2,000,000.00 for physical impairment in the future are unsupported by evidence. Plaintiffs' own expert testified that Su Min's recovery from her physical impairment would be further along but for her parent's decision to discontinue her physical therapy. Therefore, these awards should be deleted.

*Mental Anguish* – Plaintiffs' expert, Dr. Richard Cowles, performed only a general assessment of Su Min, focused primarily on her cognitive abilities. Thus, his cursory statement that Su Min was anxious or depressed cannot be the basis for for the mental-anguish awards. There is no evidence that Su Min was treated by any therapist, counselor, or psychiatrist. Thus, the mental-anguish awards should be deleted.

*Disfigurement* – Moreover, the jury's award of $500,000 for disfigurement sustained by Su Min in the past is not supported by evidence. Indeed, there is no evidence to indicate that Su Min suffered any serious, permanent scarring or other outward physical deformity. Disfigurement damages are typically awarded only in cases involving a physical blemish that visibly detracts from a person's appearance, or otherwise injures or impairs a person's beauty or symmetry, or that foster subjective feelings of embarrassment or depression created by the disfigurement.[41] Su Min testified

---

[41]     *See Goldston Corp. v. Hernandez*, 714 S.W.2d 350, 353 (Tex. App.—Corpus Christi 1986, writ ref'd n.r.e.) (disfigurement damages awarded to a man who was depressed and embarrassed about his scarred foot and amputated toe).

that her alleged depression was due to her impaired motor skills, not due to any physical deformity. Thus, the disfigurement award should be deleted.

*Bystander Damages* – To recover as a bystander under Texas law, a plaintiff must establish that:

> (1) the plaintiff was located near the scene of the accident, as contrasted with one who was a distance away from it;
>
> (2) the plaintiff suffered shock as a result of a direct emotional impact upon the plaintiff from a sensory and contemporaneous observance of the accident, as contrasted with learning of the accident from others after its occurrence; and
>
> (3) the plaintiff and the victim were closely related, as contrasted with an absence of any relationship or the presence of only a distant relationship.[42]

There is no evidence supporting any mental or emotional trauma sustained by Ji Hun due to his having witnessed the injuries suffered by Su Min. Plaintiffs presented no evidence of any therapy or counseling received by Ji Hun at any time. Indeed, Ji Hun testified that he had not undergone counseling for the accident. Further, his decision to sit out a year from school was prompted solely so that he could help his mother take care of Su Min. Thus, Ji Hun's award should be deleted.

In summary, even if AHM could be liable, the damages awards are unsupported. At a minimum, some damages awards should be disregarded. The resulting reduced award, multiplied by 23%, would necessitate reducing the judgment against

---

[42]     *United Services Auto. Ass'n v. Keith*, 970 S.W.2d 540, 542 (Tex. 1998).

AHM.

## CONCLUSION

Wherefore, Defendant American Honda Motor Co., Inc. requests that the Court vacate the June 28, 2022 Final Judgment, disregard all jury findings, and enter a take-nothing judgment, notwithstanding the jury verdict, on all claims of both Plaintiffs. Alternatively, AHM requests a partial take-nothing judgment on all claims as to which the Court agrees that the jury findings should be disregarded. This includes reducing the judgment by deleting the unsupported damages awards. AHM further requests general relief.

Respectfully submitted,

/s/ *Kurt C. Kern*
Kurt C. Kern
State Bar No. 11334600
kurt.kern@nelsonmullins.com
David P. Stone
State Bar No. 19289060
david.stone@nelsonmullins.com
NELSON MULLINS RILEY
& SCARBOROUGH LLP
5830 Granite Parkway, Suite 1000
Plano, Texas 75024
Telephone (469) 484-6100
Telecopier (469) 828-7217

ATTORNEYS FOR DEFENDANT
AMERICAN HONDA MOTOR CO., INC.

## CERTIFICATE OF SERVICE

I hereby certify that on the 25th day of July 2022, I electronically filed the foregoing with the Clerk of Court using the CM/ECF filing system and service will be perfected upon any CM/ECF participants' counsel of record electronically.

/s/ *Kurt C. Kern*
Kurt C. Kern